IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH MURCHISON, | : | CIVIL ACTION NO. **3:CV-11-1944** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| WARDEN, BRIAN BLEDSOE, et al., | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

On October 19, 2011, Plaintiff Kenneth Murchison, an inmate at the United States Penitentiary Lewisburg, Lewisburg, Pennsylvania ("USP-Lewisburg")[1], filed, *pro se*, this *Bivens* civil rights action pursuant to 28 U.S.C. § 1331.[2]  (Doc. 1).  Plaintiff attached several exhibits to his original Complaint, mainly copies of his BOP administrative remedy requests and appeals, as well

---

[1]According to the exhibits attached to the original Complaint, Plaintiff is confined in the Special Management Unit ("SMU") at USP-Lewisburg.

[2]*See Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971).   Plaintiff's action falls within 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of <u>all</u> civil actions arising under the Constitution, laws or treaties of the United States." (Emphasis added).

As Plaintiff, in part, correctly indicated (Doc. 1, p. 1), this is a *Bivens* action since Plaintiff seeks monetary damages from federal officials for alleged violations of his constitutional rights. *See Oriakhi v. Wood*, 2006 WL 859543, * 1, n. 1 (M.D. Pa.); *Conway v. Lindsay*, 2009 WL 1956282 (M.D. Pa.).  However, Plaintiff incorrectly indicated that his case was also filed under 42 U.S.C. §1983.   Because Plaintiff is not complaining that his constitutional rights were violated by any state actor Defendants, this is not a §1983 civil rights action.  *See Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M.D. Pa. 2005).

as responses thereto. Plaintiff filed a Motion for Leave to Proceed *In Forma Pauperis*. (Doc. 2).[3]

Plaintiff also filed a Motion for Preliminary Injunction. (Doc. 4). Plaintiff's original Complaint was

a short three (3) page form Complaint. (Doc. 1). Plaintiff raised several claims, including an Eighth

Amendment denial of medical care claim, an Eighth Amendment conditions of confinement claim,

a First Amendment denial of access to courts claim, a Fifth Amendment due process claim, as well

as a claim under Section 504 of the Rehabilitation Act, 29 U.S.C. §794, *et seq.*, and a claim under

the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*[4]

On November 9, 2011, Plaintiff filed additional exhibits regarding administrative remedies

he filed with the prison, the responses thereto, and appeals. (Doc. 7).

Plaintiff's Eighth Amendment denial of medical care claim, his claim under Section 504 of

the Rehabilitation Act and his ADA claim all appeared to relate to his allegation that his housing unit

in the SMU was not allowed to possess an "Emergency Alert, Medical Call Button." (*Id.*, p. 2).

Plaintiff's Eighth Amendment conditions of confinement claim related to his allegations that he was

housed in the SMU without proper air conditioning and proper ventilation, and that he was

exposed to "extreme tempertures (sic), namely "heat' in the sometime (sic) [summer], [in] excess,

110 [degrees]."   Plaintiff's First Amendment denial of access to courts claim and his Fifth

---

[3]Plaintiff indicated that he would be filing a Federal Tort Claims Act ("FTCA") case in federal court in November 2011, after he exhausts his tort claim with the BOP. (Doc. 1, p. 5).

[4]Plaintiff incorrectly indicated that his due process claim was under the Fourteenth Amendment in addition to the Fifth Amendment. (Doc. 1, p. 3). Since Plaintiff is a federal inmate complaining of violations of his constitutional rights by federal officials, his due process claim is only under the Fifth Amendment. *See Cadmus v. U.S.*, 2009 WL 1532059, *5 (M.D. Pa. 6-1-09)(Court found that since Plaintiff was suing federal officials in *Bivens* action, Fourteenth Amendment was not applicable to his claims, rather Fifth Amendment applied).

Amendment due process claim related to his allegations that his grievances regarding his stated Eight Amendment claims were not properly processed by the BOP, were denied by "fraudulent measures of new procedures," and were wrongly rejected by the BOP.  (*Id*.).

This Court has jurisdiction over Plaintiff's *Bivens* civil rights action pursuant to 28 U.S.C. § 1331.  *See Oriakhi v. Wood, supra.; Latansio v. Sabol,* 2010 WL 4340394 (M.D. Pa. 10-26-10).

In his original Complaint, Plaintiff named the following two (2) Defendants: USP-Lewisburg Warden, Brian A. Bledsoe; and BOP Northeast Regional Director, J. L. Norwood.  (Doc. 1, pp. 1-2). Plaintiff did not indicate if he was suing the Defendants in their official or personal capacities.  As relief, Plaintiff requested  injunctive relief as well as monetary damages, both compensatory and punitive damages.[5]  (*Id*., p. 3).

On November 21, 2011, we screened Plaintiff's original Complaint as required under the PLRA and recommended that Plaintiff's claim for damages against the Defendants in their official capacities be dismissed with prejudice.  We recommended that Plaintiff's claim for injunctive relief in his Complaint for the Court to order the  BOP to give him "an immediate transfer" away from USP-Lewisburg be dismissed with prejudice.  Additionally, we recommended that Plaintiff's Injunction Motion (Doc. 4) requesting his immediate transfer to USP-Allenwood be denied.  We also recommended that Plaintiff's Eighth Amendment conditions of confinement claim and his First Amendment denial of access to courts claim against Defendants Bledsoe and Norwood be

---

[5]In a *Bivens* suit, Plaintiff cannot sue the individual  federal Defendants for damages in their of official capacities.  *See Smith v. U.S.*, 2007 WL 7313360, *6, n. 13 (M.D. Pa.)(citation omitted).  Thus, insofar as Plaintiff was seeking damages against the Defendants in their official capacities, the Court dismissed such claims  with prejudice.  (Doc. 17).

dismissed without prejudice.  We additionally recommended that Plaintiff's due process claims under the Fifth and Fourteenth Amendments, and Plaintiff's Eighth Amendment claim for denial of proper medical care against Defendants Bledsoe and Norwood, be dismissed with prejudice.

Further, we recommended that Plaintiff's ADA claim be dismissed with prejudice as against Defendants Bledsoe and Norwood in their individual capacities, and that Plaintiff's ADA claim against Defendants Bledsoe and Norwood in their official capacities for injunctive relief be dismissed without prejudice.  We also recommended that Plaintiff's Rehabilitation Act claim be dismissed with prejudice as against Defendants Bledsoe and Norwood.  (Doc. 9).

On November 22, 2011, Plaintiff filed a Motion for Class Action Certification, a Motion for Appointment of Counsel, and a Motion for Leave to file an Amended Complaint along with a proposed Amended Complaint.  (Docs. 10, 11 and 12, and 13).

On January 17, 2012, the Court adopted our Doc. 9 R&R and recommitted this case to the undersigned.  (Doc. 17).

On January 17, 2012, we issued a Memorandum and Order with respect to Plaintiff's pending Motions, namely, his Motion for Class Action, his Motion for Appointment of Counsel, and his Motion for Leave to file an Amended Complaint (Docs. 10, 11 and 12).   (Doc. 17).   In our Order, we directed as followed**:**

   **1)** Plaintiff's Motion for Class Certification under Rule 23 **(Doc. 10) is DENIED**.

   **2)**   Plaintiff 's Motion for Appointment of Counsel **(Doc. 11) is DENIED.**

   **3)**   Plaintiff 's Motion for Leave to Amend his Complaint  **(Doc. 12) is GRANTED**.

   **4)** The Clerk of Court is directed to file and docket Plaintiff's Amended Complaint **(Doc. 13).**

4

(*Id*.).

Subsequently, on January 24, 2012, the Clerk of Court docketed Plaintiff 's proposed Amended Complaint.  (Doc. 19).  Also, on January 24, 2012, Plaintiff filed a Motion for Enforcement of the Court's Doc. 17 Order recommitting this case to the undersigned.  (Doc. 20). Plaintiff simply requests that the undersigned review his Amended Complaint, to "issue a Report and Recommendation favorly (sic) upon it" and to allow his case to proceed.  Plaintiff attached two exhibits to his Doc. 20, namely copies of his June 2011 administrative remedy appeal regarding his grievance that upon his May 2011 arrival at USP-Lewisburg he should not have been ordered to serve an additional 24 months in the SMU program and a copy of the BOP's final response and denial of his appeal dated January 10, 2012.  We will recommend that Plaintiff's Doc. 20 Motion be denied as moot since we are, in fact, screening his Amended Complaint as he requests in this instant R&R.[6]

---

[6]Insofar as Plaintiff requests in his Doc. 20 Motion that his Doc. 4 Injunction Motion, which the Court denied in its Doc. 17 Order, be reinstated and re-entertained by the Court due to his new claims that his health is deteriorating and that he is "actually dying," Plaintiff must file a new motion with a support brief. We note that Plaintiff has not submitted any evidence to substantiate his new claims to show that his health condition is grave.

Further, in his Doc. 4 Motion, Plaintiff moved the Court for injunctive relief in the nature of an order that the BOP give him "an immediate transfer" away from USP-Lewisburg and the Northeast Region.  This Court has already found that it generally does not interfere with the BOP's decision as to where Plaintiff is confined. *See Perez-Rodriguez v. Holt*, 2010 WL 5437492, *2 (M.D. Pa. 11-3-10)(citations omitted) affirmed 2011 WL 2938152 (3d Cir. 7-22-11).  Also, this Court has found that Plaintiff has no constitutional right to be confined in any particular prison or to be transferred to any particular prison. *Id*.

Plaintiff indicates in his Amended Complaint that he exhausted his BOP administrative remedies regarding some of his present claims, but it appears not all of them. (Doc. 19, p. 1). As mentioned, Plaintiff attached to his original Complaint exhibits regarding his attempts to exhaust his claims.[7]  (Doc. 1).   Plaintiff also again states in his Amended Complaint that the BOP administrative remedy process at USP-Lewisburg "is being severely violated" and that grievances are being "fraudulently handled" on all levels of the BOP.  (Doc. 19, p. 1).

On January 27, 2012, Plaintiff filed a Motion to Supplement the Record with an attached exhibit. **(Doc. 21)**. Plaintiff states that on January 13, 2012, the BOP Regional Counsel finally denied his July 14, 2011 administrative tort claim he filed under the Federal Tort Claims Act, 28 U.S.C. §2672. Plaintiff's Exhibit A attached to his Doc. 21 Motion is a copy of the letter from the BOP Regional Counsel denying his tort claim. Plaintiff states that he wants to supplement the record in his present *Bivens* civil rights action to show that his tort claim "has now been unsuccessfully exausted (sic) and that lawful remedy, on the administrative level, has been denied." Plaintiff also states that this letter from the BOP shows that it delayed deciding his tort claim for six months while his health deteriorated and that this denied him access to the court to redress his claim.

---

[7]It is well-settled that the Plaintiff must exhaust all of his available administrative remedies with respect to each and every one of claims prior to filing a civil rights suit. In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*

6

We will recommend that the Court deny Plaintiff's Doc. 21 Motion to Supplement the Record to show he exhausted his tort claim under the FTCA. We find that Plaintiff must file a separate action against the United States under the FTCA.  We find that Plaintiff has not properly raised a claim under the FTCA in his present case.   The United States of America is the only proper Defendant in a FTCA suit, and the United States has waived sovereign immunity for an FTCA action.  *See Sash v. Hogsten*, 2008 WL 618945 (M.D. Pa.). The provisions of the FTCA govern all claims against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment.  28 U.S.C. § 2675(a).  *See Rosario v BOP*, 2007 WL 951468, *4 (M.D. Pa.).  According to the FTCA, "an action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a).  Thus, a private Plaintiff may not sue the U.S. under the FTCA without first having filed a claim with the appropriate responsible federal agency. *Id.*; *see Albani v. U.S.*, 2010 WL 2364426, *6 (E.D. Pa. June 09, 2010).[8]

Section 2675(a) further elaborates that a claim against the U.S. may not exceed the amount initially claimed against the appropriate federal agency. *Id.*   In *Belcher v. U.S.*, 2005 WL 2175709,

---

[8]Plaintiff's Ex. A to his Doc. 21 Motion shows that on January 13, 2012, Plaintiff exhausted his administrative remedy with the BOP regarding his tort claim under the  FTCA.

*3 (M.D. Pa. September 06, 2005), the Court stated:

> Prior to filing an FTCA action against the United States, a plaintiff must first have presented the claim to the appropriate federal agency and the claim must have been denied. *See* 28 U.S.C. § 2675. Except for limited circumstances, an FTCA claim in federal court is limited to recovery of the sum certain amount requested in the underlying administrative claim. *See McMichael v. United States,* 856 F.2d 1026, 1035 (8th Cir.1988).

(footnote omitted).

Thus, we find the fact that Plaintiff has now exhausted his tort claim with the BOP under the FTCA to have no relevance in the instant case.

We will now screen Plaintiff's Amended Complaint (Doc. 19) as we are obliged to do under the PLRA.[9] *See Abdul-Akbar v. McKelvie*, 239 F. 3d 307, 314 (3d Cir. 2001); *Banks v. County of Allegheny*, 568 F.Supp.2d 579, 589 (W.D. Pa. 2008).

**II.  PLRA.**

The Prison Litigation Reform Act of 1995,[10] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  Specifically, § 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii)

---

[9]The undersigned has been assigned this case for all pre-trial matters.

[10]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

seeks monetary relief against a defendant who
is immune from such relief.

## III. Bivens Standard.

A *Bivens* civil rights action under § 1331 has the same standards as does a § 1983 civil rights

action.  In *Naranjo v. Martinez*, 2009 WL 4268598, *6 (M.D. Pa.), the Court stated:

> *Bivens* creates no substantive rights, but rather allows "a citizen
> suffering a compensable injury to a constitutionally protected interest [to]
> invoke the general federal-question jurisdiction of the district court to
> obtain an award of monetary damages against the responsible federal official."
> *Butz v. Economou*, 438 U.S. 478, 504, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).
> A civil rights claim brought under Bivens is the federal counterpart to an
> action brought under 42 U.S.C. § 1983, and the same legal principles
> governing a § 1983 claim apply to a *Bivens* claim.  *Brown v. Philip Morris Inc.*,
> 250 F.3d 789, 800 (3d Cir.2001); *Paton v. LaPrade*, 524 F.2d 862, 871
> (3d Cir.1975); *Cyrus v. Hogsten*, No. 06-2265, 2007 WL 88745, at *3
> (M.D.Pa. Jan.9, 2007). To state a claim under *Bivens,* the plaintiff must show
> that the defendant, acting under color of Federal law, deprived him of a
> right secured by the Constitution or laws of the United States. *Brown*,
> 250 F.3d at 800; *Cyrus*, 2007 WL 88745, at *3.
>
> Civil rights claims may only be brought against "persons." 42 U.S.C.
> § 1983. Individual liability in a civil rights action is personal in nature,
> and a defendant is liable only if he was personally, affirmatively involved
> in the alleged malfeasance. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159,
> 173 (3d Cir.2005); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294
> (3d Cir.1997), abrogated in part on other grounds by *Burlington N. & Santa
> Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345
> (2006) (citing *Rhode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988).
> Further, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983
> suits, a plaintiff must plead that each Government-official defendant,
> through the official's own individual actions, has violated the constitution."
> *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1948, 173 L.Ed.2d
> 868 (2009) (collecting cases).

*See also Latansio v. Sabol,* 2010 WL 4340394, *2-*3.

**IV. Allegations of Amended Complaint (Doc. 19).**

In his Amended Complaint, Plaintiff names the following seven (7) Defendants: USP-Lewisburg Warden, Brian A. Bledsoe; BOP Northeast Regional Director, J. L. Norwood; Unknown BOP Administrative Remedy Coordinators; Henry J. Sadowski, BOP Tort Claim Coordinator; Physician Assistant ("PA") Potter; Dr. Pigos, MD; and unnamed USP-Lewisburg "Sort" [CERT] Team Members. (Doc. 19, p. 1). In his Amended Complaint, Plaintiff indicates that he sues Defendants in both their personal capacities and their official capacities.[11]

With respect to the two USP-Lewisburg medical Defendants, Dr. Pigos and PA Potter, Plaintiff alleges that they intentionally and maliciously, and without any examination, drastically lowered his dosage of Gabapentin pain medication he required for his nerve disease and pain caused by his Type I diabetes by 300 mgs. per dose, *i.e.*, from 1200 mgs. to 900 mgs., twice per day in retaliation for a prior adverse incident he had with Defendant PA Potter, a medical staff member at the prison. (*Id.*, p. 2). Plaintiff avers that the dosage was deliberately lowered by the medical Defendants as punishment for the prior conflict and to cause him excruciating pain for seven (7) days. Plaintiff states that it also caused him irreparable damage to his body, including permanent debilitating injuries to his nerve endings. Plaintiff states that the alleged conduct of Defendants Pigos and Potter violated his Eighth Amendment rights, as well as the ADA, since he is disabled due to his chronic conditions.

---

[11]As noted, insofar as Plaintiff is seeking damages against the Defendants in their official capacities, the Court dismissed such claims with prejudice. (Doc. 17).

As to Defendant Bledsoe, Plaintiff alleges that as Warden Bledsoe was in charge of the SMU at USP-Lewisburg and that Bledsoe worked in concert with the Cert Team members and grievance coordinators at the prison.   Plaintiff avers that Defendant Bledsoe, due to his supervisory position, was involved in the alleged unconstitutional conduct taken against him and oversaw the running of the SMU program.  (*Id.*, pp. 2-3).   Plaintiff also appears to allege that on November 25, 2011, the Cert Team at the prison had to use force on him to force him to be celled with another inmate. (*Id.*, p. 3).   Plaintiff avers that Defendant Bledsoe, based on his supervisory authority, was responsible for the force used by the Cert Team.   Plaintiff does not allege that he was injured. Rather, he states that he was subjected to "threats of violence."  (*Id.*).

Plaintiff avers that BOP supervisory officials Norwood and Sadowski are liable since they were aware of the alleged unconstitutional conduct taken against him at USP-Lewisburg based on his administrative remedies he filed (Norwood) and his FTCA tort claim he filed with the BOP (Sadowski).  (*Id.*).   Plaintiff alleges that these two Defendants denied his administrative remedies appeals and his tort claim despite being notified, through his requests, of the improper conduct against him and the lack of an emergency medical alert button in his housing unit at USP-Lewisburg for chronic care inmates.   Plaintiff avers that BOP supervisory officials Norwood and Sadowski fraudulently handled his appeals of his administrative remedies and his tort claim, and that they denied him his due process rights by denying his appeals and tort claim.[12]  (*Id.*, pp. 3-4).

---

[12]As stated above, Plaintiff's Doc. 21 Motion and Ex. A shows that BOP Northeast Regional Counsel Michael Tafelski issued the final denial of Plaintiff's tort claim under the FTCA.

11

Plaintiff further complains about the conditions of confinement in USP-Lewisburg and in the SMU program, including "light torture," in which bright lights allegedly blare for 18 hours and then 6 hours of total darkness.  Plaintiff also alleges that constant hostilities, harassment, excessive use of pepper spray, excessive noise, yelling and beatings occur in the SMU Program housing units. However, Plaintiff does not state the personal involvement of any of the named Defendants with respect to his Eighth Amendment conditions of confinement claim.  (*Id.*, p. 4).

As relief, Plaintiff requests compensatory and punitive damages.  Plaintiff also requests injunctive relief.[13]  (*Id.*, p. 5).

As discussed below, we find that Plaintiff has stated Eighth Amendment denial of proper medical care claim against Defendants Dr. Pigos and PA Potter.  We do not find that Plaintiff has stated any other cognizable constitutional claim against the other Defendants.  Nor do we find that Plaintiff has properly stated a claim under the ADA against any Defendant in their official capacity for injunctive relief.

## V.  Discussion.

1.    *Lack of Personal Involvement of Supervisory Officials Warden Bledsoe, BOP Regional Counsel Sadowski and BOP Northeast Regional Director Norwood*

In his Amended Complaint, Plaintiff names as Defendants three BOP supervisory officials, namely, USP-Lewisburg Warden, Brian Bledsoe, BOP Regional Counsel Sadowski and BOP Northeast Regional Director Norwood.  The latter two BOP supervisory officials are named as

---

[13]To the extent Plaintiff again seeks injunctive relief in the form of an Order from this Court to immediately transfer him from USP-Lewisburg (Doc. 19, p. 5, ¶ 3), the Court has already denied this request.  (Doc. 17).

Defendants due to their respective responses and denials of Plaintiff's FTCA tort claim and Plaintiff's administrative remedy appeals.  All three stated Defendants are clearly in supervisory positions with the BOP, and none of them are sufficiently alleged to have been personally involved with respect to Plaintiff's above stated constitutional claims.  It is well established that personal liability in a civil rights action cannot be imposed upon a prison official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Sutton v. Rasheed*, 323 F.3d 236, 249-250 (3d Cir. 2003); *Carpenter v. Kloptoski*, 2011 WL 995967, *6 (M.D. Pa. 3-17-11).

We find that Plaintiff's Amended Complaint lacks sufficient allegations of personal involvement, as required in a *Bivens* action, as against Defendants Warden Bledsoe, BOP Regional Counsel Sadowski and BOP Northeast Regional Director Norwood.

In *O'Connell v. Sobina*, 2008 WL 144199, * 21 (W.D. Pa.), the Court stated:

> Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions.  *Rode*, 845 F.2d at 1207.  "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."  *Id.  See also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).  Moreover, in order to maintain a claim for supervisory liability, a plaintiff must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations.  *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293 (3d Cir. 1997); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

As stated, the Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss.  *See Banks v. County of Allegheny*, 568 F.Supp.2d 579, 588 (W.D.

Pa. 2008).

In *Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009), the Court, citing *Iqbal,* stated:

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* No. 07-1015, slip op. at 14 (May 18, 2009) [129 S. Ct. 1937 (2009)] (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

> "Innis's allegation against Wilson also fail because Innis is attempting to establish liability based on supervisory liability. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988) (liability cannot be predicated solely on the operation of respondeat superior, as a defendant must have personal involvement in a civil rights action). Innis does not allege that Wilson had personal knowledge of his injury and subsequently acted with deliberate indifference. *Spruill,* 372 F .3d at 236. Accordingly, these claims were properly dismissed."

In *Saltzman v. Independence Blue Cross*, 2009 WL 1606887, *4 (E.D.Pa.), the Court stated:

> The Court in *Iqbal* explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. *Id.* at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly,* 550 U.S. at 555); *see also Phillips v. County of Allegheny,* 515 F.3d 224, 232 (3d Cir.2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing *Twombly,* 550 U.S. at 556 n. 3)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556).

*See also Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d Cir. 12-14-10).

Based on the above detailed allegations in Plaintiff's Amended Complaint, Defendants

Warden Bledsoe, BOP Regional Counsel Sadowski and BOP Northeast Regional Director Norwood

14

have not been sufficiently stated to have been personally involved with Plaintiff's constitutional claims.  Also, Plaintiff does not allege that these Defendant were involved with the decision to lower his dosage of pain medication, Gabapentin, or with the conditions in Plaintiff's cell and housing unit in the SMU.[14]

In *Carpenter v. Klopotoski*, 2011 WL 995967, *7, the Court stated:

> To maintain a claim for supervisory liability, plaintiff "must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations." *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1293 (3d Cir.1997); *Baker v. Monroe Twp.,* 50 F.3d 1186, 1190-91 (3d Cir.1995).

Further, as mentioned,  the only involvement of Defendants Norwood and Sadowski with Plaintiff's claims are their respective  responses  to Plaintiff's administrative remedies and appeals, and to Plaintiff's FTCA tort claim. (See Doc. 19, pp. 3-4 & Doc. 1 exhibits).[15]  This is insufficient personal involvement with respect to Defendants Norwood and Sadowski.   Also, the alleged conduct of Defendants Norwood and Sadowski does not state a cognizable due process claim.  In fact, as stated, the Court has already dismissed with prejudice Plaintiff's due process claims under both the Fifth Amendment and the Fourteenth Amendment. (Doc. 17).

---

[14]In any event, as stated, the Court has already dismissed with prejudice Plaintiff's Eighth Amendment denial of proper medical care claim against Defendants Bledsoe and Norwood. (Doc. 17).

[15]As stated above, Plaintiff attached a copies of his administrative remedy requests and appeals to his original Complaint.  Also, as stated, Plaintiff's Doc. 21 Motion shows that Tafelski finally denied Plaintiff's tort claim, and not Defendant Sadowski.

It is well-established that inmates do not have a constitutionally protected right to a prison grievance system. *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 137-38, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *See also Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991) (ruling that federal grievance regulations providing administrative remedy procedure do not create liberty interest in access to that procedure).   It is further well-settled that officials handling of prison grievance procedures does not equate to personal liability in a civil rights claim. *Burnside v. Moser,* Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa., aff'd. 138 Fed. Appx. 414 (3d Cir. 2005).  *See also Mitchell v. Dodrill*, 696 F.Supp.2d 454, 469 (M.D.Pa. 2010).

Plaintiff does not allege in his Amended Complaint sufficient actual personal involvement of Defendants Bledsoe, Sadowski and Norwood with respect to his constitutional claims. Additionally, as stated, Plaintiff seemingly alleges that the only personal involvement of Defendants Norwood and Sadowski was denying his administrative remedy request appeals and denying his tort claim.  Plaintiff has failed to sufficiently state any personal involvement of all three  named BOP supervisory Defendants.  Nor does Plaintiff name as a Defendant in his Amended Complaint any prison official personally involved in the decision to house him in a cell in the SMU at USP-Lewisburg and any prison official who was personally involved in the alleged conditions there.  We, therefore, will recommend that the three supervisory Defendants be dismissed from this case with prejudice.

Based upon the above, we find that it would be futile and prejudicial to Defendants  to allow Plaintiff once again to amend his pleading, *i.e.* his Amended Complaint, against Defendants USP-Lewisburg Warden Bledsoe, BOP Regional Counsel Sadowski and BOP Northeast Regional

Director Norwood to allege their personal involvement with respect to any of his constitutional claims.  Plaintiff has already been afforded one opportunity to amend his claims against the BOP supervisory officials and he has failed to do so in a manner required to state cognizable constitutional claims against them.  The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless the Court finds bad faith, undue delay, prejudice, or futility.  *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002); *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004).

        *2.     Eighth Amendment Conditions of Confinement Claim*

        Plaintiff's Eighth Amendment conditions of confinement claim relates to his cell in the SMU at USP-Lewisburg and his allegations that he is being exposed to "harsh environmental conditions, improper ventilation, [and] extreme temperatures," and that there is no Emergency Medical Alert Button in the cells in the SMU which house the chronic care patients, such as himself.  (Doc. 19, p. 3).  Plaintiff also alleges "light torture."  Plaintiff avers that these allegations amount to violations of his Eighth Amendment rights against cruel and unusual punishment.  As mentioned, Plaintiff does not sufficiently state the personal involvement of any Defendant with respect to his Eighth Amendment conditions of confinement claim.  Plaintiff merely alleges that Defendant Norwood and Defendant Sadowski had knowledge of the alleged conditions in the SMU at USP-Lewisburg due to their responses to his administrative remedies appeals and to his tort claim.  Plaintiff alleges that Defendant Warden Bledsoe was responsible for the conditions in the SMU Housing Units due to his position.  This is not sufficient to state the personal involvement of these three supervisory

17

officials as discussed above.  Simply put, these three Defendants would be liable in almost every

civil rights action filed by a federal inmate who raised *Bivens* and FTCA claims.  Plaintiff does not

state that any other Defendant was personally involved with the alleged conditions in the SMU

Housing Units.

Thus, we find that no viable Eighth Amendment conditions of confinement claim is stated

by Plaintiff against any Defendant.  Also, as stated in our prior R&R, with respect to Plaintiff's instant

request for injunctive relief to be immediately transferred from USP-Lewisburg,  Plaintiff has no

constitutional right to be confined in any particular prison or to a transfer from USP-Lewisburg so

that he will no longer be subject to the alleged "hostile environment and conditions."  (Doc. 19,

p. 5).

The Court in *Mitchell v. Dodrill*, 696 F.Supp.2d at 466, stated:

> "The Eighth Amendment prohibition against cruel and unusual punishment
> demands that prison officials do no house inmates under conditions that
> deprive them of one or more basic human needs, such as the basic human
> need for reasonable safety, adequate physical space, and the need for some
> degree of ventilation and fresh air." *Helling v. McKinney*, 509 U.S. 25, 32
> (1993).  However, the Eighth Amendment does not mandate that prisons be
> free of discomfort *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting
> *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  No static test determines
> whether conditions of confinement are "cruel and unusual."  These terms
> must "draw [their] meaning from the evolving standards of decency that
> mark the progress of a maturing society. *Tillery v. Owens*, 719 F. Supp.
> 1256, 1261 (W.D.Pa 1989).
> To establish an Eighth Amendment claim, Mitchell must show that he
> has been deprived of "the minimal civilized measure of life's necessities."
> *Griffin v. Vaughn,* 112 F.3d 703, 709 (3d. Cir. 1997) (quoting *Young v.*
> *Quinlan*, 960 F.2d 351, 359 (3d. Cir. 1992)).  In reviewing this type of claim,
> courts have stressed the duration of the complainant's exposure to
> the alleged unconstitutional conditions and the "totality of the
> circumstances" as critical to a finding of cruel and inhumane treatment.
> *Rhodes*, 452 U.S. at 362-363.  Moreover, the focus must be on the

deprivation of a particular basic necessity.  As explained by the
United States Supreme Court:

> Some conditions of confinement may establish an Eighth
> Amendment violation "in combination" when each would not
> do so alone, but only when they have a mutually enforcing
> effect that produces the deprivation of a single, identifiable human
> need such as food, warmth, or exercise-for example, a low cell
> temperature at night combined with a failure to issue blankets.
> To say that some prison conditions may interact in this fashion is a
> far cry from saying that all prison conditions are a seamless web
> for Eighth Amendment purposes. Nothing so amorphous
> as "overall conditions" can rise to the level of cruel and unusual
> punishment when no specific deprivation of single human need
> exists.  *Wilson v. Seiter*, 501 U.S. 294, 304-305 (1991).

> In addition to showing conditions that pose a significant risk of
> serious harm, the inmate must show that the person or persons
> responsible for the conditions of confinement acted with
> "a sufficiently culpable state of mind." *Id. at 298*.  As described
> by the Supreme Court in *Farmer,* the standard for
> determining deliberate indifference in a conditions of confinement
> case is whether a prison official knew of and disregarded an excessive
> risk to an inmate's health or safety. *Farmer,* 511 U.S. at 837. The
> Court added that "it is enough that the official acted or failed to
> act despite his knowledge of a substantial risk of harm." *Id.* at 842.

We again find that Plaintiff has failed to sufficiently state the personal involvement of any

Defendant with respect to his Eighth Amendment conditions of confinement claim.  *See Carpenter,*

2011 WL 995967, *6.  In *Carpenter,* the Court stated:

> An Eighth Amendment violation occurs when the prison official is
> deliberately indifferent to inmate health or safety and when this act or
> omission results in the denial of "the minimal civilized measure of life's
> necessities." *See Farmer,* 511 U.S. at 832 (1994). Therefore, a prison official
> can be held liable under the Eighth Amendment for denying humane
> conditions of confinement if he knows that inmates face a substantial risk
> of serious harm and disregards that risk by failing to take reasonable
> measures to abate it. *See id.* at 847, 511 U.S. 825, 114 S.Ct. 1970, 128
> L.Ed.2d 811. Claims of negligence, without a more culpable state of mind,

19

do not constitute "deliberate indifference." *See Singletary v. Pennsylvania Dept. Of Corrections,* 266 F.3d 186, 193 n. 2 (3d Cir.2001).

Plaintiff does not properly allege that any Defendant was personally aware that he faced a substantial risk to serious harm to his health by the temperatures he was exposed to in the SMU and that these Defendants disregarded that risk by failing to take reasonable measures to abate the heating and ventilation systems. Further, Plaintiff does not allege the he personally complained to any Defendant about the lack of heat, air conditioning and ventilation in his SMU cell and that Defendants ignored his complaints. Moreover, Plaintiff does not state that any Defendant was deliberately indifferent to his serious medical conditions by failing to have the Emergency Medical Alert Button in his cell in the SMU. Nor do we find that Plaintiff alleges the lack of an Emergency Medical Alert Button in his cell actually caused him any harm of needless suffering.[16]   Thus, we will recommend that Plaintiff's Eighth Amendment conditions of confinement claim be dismissed with prejudice as against all Defendants. Based upon the above, we find that it would be futile and prejudicial to Defendants to allow Plaintiff once again to amend his pleading, *i.e.* his Amended Complaint, against Defendants to allege their personal involvement with respect to his Eighth

---

[16]In his original Complaint, Plaintiff alleged that Defendants Bledsoe and Norwood violated his right to proper medical care by denying the cells in the chronic care housing unit in the SMU to have an "Emergency Alert, Medical Call Button." Plaintiff did not allege that he suffered any negative health consequences by not having an "Emergency Alert, Medical Call Button" in his housing unit in the SMU. Nor did Plaintiff allege that Defendants Bledsoe and Norwood were personally involved in the decision not to allow an "Emergency Alert, Medical Call Button" in his housing unit in the SMU, and that they knew the lack of such button would expose Plaintiff to undue suffering or the threat of injury to a serious medical condition. As stated, Plaintiff's Eighth Amendment claim for denial of proper medical care against the two Defendants named in Plaintiff's original Complaint, Defendants Bledsoe and Norwood, was dismissed with prejudice in the Court's Doc. 17 Order.

20

Amendment conditions of confinement claim. Plaintiff has already been afforded one opportunity to amend his claims against Defendants with respect to his Eighth Amendment conditions of confinement claim and he has failed to do so in a manner required to state a cognizable constitutional claim against them.  The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless the Court finds bad faith, undue delay, prejudice, or futility.  *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002); *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004).

     3.     *Defendants Unknown Cert Team Members*

Plaintiff names as Defendants in his Amended Complaint Unknown Cert Team Members at USP-Lewisburg.[17]  Plaintiff simply alleges that on November 25, 2011, he was recklessly and intentionally placed  in danger and  his safety was threatened when Defendants Unknown Cert Team Members, by use of force, executed an unwritten but established policy of "Forced Cell-Mating." (Doc. 19, p. 3).   Plaintiff states that by being forced to be celled with another inmate by "threats and threats of violence" from Unknown Cert Team Members, he was exposed to potential danger and his safety was threatened.  Plaintiff does not allege that he was actually harmed by the CERT Team member or by his cell mate.

We find no cognizable constitutional claim is stated as against Defendants Unknown Cert Team Members.  We will recommend that Defendants Unknown Cert Team Members be dismissed

---

[17]In the caption of his amended pleading Plaintiff refers to these Defendants as "Sort" Team Members, but in the body of his pleading he calls them "Cert" Team Members.  (Doc. 19, pp. 1 and 3).

with prejudice.  Since Plaintiff has already been afforded one opportunity to amend his claims against Defendants with respect to his Eighth Amendment claims  and he has failed to do so in a manner required to state a cognizable constitutional claim against them, we find futility and prejudice to Defendants to allow Plaintiff another opportunity to amend his pleading.  The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless the Court finds bad faith, undue delay, prejudice, or futility.  *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002);  *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004).

      4.     *Eighth Amendment Denial of Proper Medical Care Claim*

      Initially, as stated, Plaintiff's Eighth Amendment claim for denial of proper medical care against the two Defendants named in Plaintiff's original Complaint, Defendants Bledsoe and Norwood, was dismissed with prejudice in the Court's Doc. 17 Order.  However, in his Amended Complaint, Plaintiff now names as Defendants Dr. Pigos and PA Potter, and he alleges that these two new medical Defendants were personally involved with his medical care for his chronic diabetes condition.  Plaintiff also alleges that these two Defendants deliberately lowered his dosage of his prescribed pain medication in order to cause him to suffer severe pain as retaliation for a prior dispute he had with Defendant Potter.

      In *Carpenter,* 2011 WL 995967, *8, the Court stated:

> To demonstrate a prima facie case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, plaintiff must establish that defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Durmer v. O'Carroll,* 991 F.2d 64, 67 (3d Cir.1993). There are two components to this standard: First, a plaintiff must make an "objective" showing that the deprivation

was "sufficiently serious," or that the result of the defendant's denial was sufficiently serious. Additionally, the plaintiff must make a "subjective" showing that defendant acted with "a sufficiently culpable state of mind." *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *see also Montgomery v. Pinchak,* 294 F.3d 492, 499 (3d Cir.2002). The "deliberate indifference to serious medical needs" standard is obviously met when pain is intentionally inflicted on a prisoner, when the denial of reasonable requests for medical treatment exposes the inmate to undue suffering or the threat of tangible residual injury, or when, despite a clear need for medical care, there is an intentional refusal to provide that care. *See Spruill v. Gillis,* 372 F.3d 218, 235 (3d Cir.2004) (quoting *White v. Napoleon,* 897 F.2d 103, 109 (1990); *Monmouth County Corr. Inst. Inmates v. Lensario,* 834 F.2d 326, 346 (3d Cir.1987).

Plaintiff states that the two medical staff Defendants at the prison deliberately lowered his dosage of Gabapentin to punish him and cause him pain.  We find that Plaintiff sufficiently alleges that Defendants Dr. Pigos and PA Potter were deliberately indifferent to his serious medical needs for his diabetes condition, and that he was under the care of the prison medical staff, and that the medical staff, *i.e.* Defendants PA Potter and Dr. Pigos, were aware of his conditions.

Therefore, we will recommend that Plaintiff's Eighth Amendment claim for denial of proper medical care against Defendants PA Potter and Dr. Pigos be allowed to proceed.  Based upon the above discussion, we now find that Plaintiff has stated an Eighth Amendment claim for denial of proper medical care against the two new medical Defendants, Dr. Pigos and PA Potter.  *See Carpenter, supra*.  As such, we will recommend that Plaintiff's case as against Dr. Pigos and PA Potter proceed.[18]

---

[18]As stated above, Plaintiff's Doc. 20 Motion for the Court to allow his case to proceed is moot.

23

6.     *ADA Claim*

In his Amended Complaint, Plaintiff alleges that since he "is in chronic care," he is "disabled" and protected by the ADA.  (Doc. 19, p. 2).  As stated, the Court dismissed without prejudice, from his original Complaint, Plaintiff's ADA claim for injunctive relief against Defendants in their official capacities.  (Doc. 17).  Plaintiff again appears to allege that the lack of an "Emergency Alert, Medical Call Button" in his housing unit for the chronic care patients in the SMU and that the harsh environmental conditions, improper ventilation and extreme temperatures in the SMU violated the ADA.  Plaintiff also appears to allege that the lowering of the dosage of his pain medication by Defendants Pigos and Potter violated the ADA.  We find that Plaintiff has failed to state an ADA claim against Defendants.  As stated, Plaintiff indicates that he sues the Defendants in both their personal capacities and their official capacities in his Amended Complaint.  Also, as stated, Plaintiff seeks, in part, monetary damages in his Amended Complaint. Plaintiff also requests injunctive relief in his Amended Complaint.  (Doc. 19, p. 5).  The Court has previously dismissed with prejudice Plaintiff's Title II ADA claim against Defendants in their individual capacities.  (Doc. 170.

In *Carpenter v. Klopotoski*, 2010 WL 981825, *4 (M.D. Pa. 3-10-10), the Court stated:

> Title II of the Americans With Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. As used in Title II of the ADA, "public entity" is defined as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 103(8) of the Rail Passenger Service Act [49 U.S.C.S. § 24102(4) ] )." 42 U.S.C. § 12131(a).

> State prisons fall squarely within the statutory definition of "public entity" in
> Title II of the ADA. *Pennsylvania Dep't of Corrections v. Yeskey,* 524 U.S.
> 206, 210, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998). However, the plain
> language of §12132 applies only to public entities not individuals.
> *Yeskey v. Commonwealth,* 76 F.Supp.2d 572, 575 (M.D.Pa.1999)
> (holding that individuals are not liable under Title II because it
> prohibits discrimination in programs of a "public entity" or discrimination
> "by any such entity" and "public entity" is not defined in Title II to
> include individuals). None of the moving defendants qualify as a public
> entity. Therefore, the ADA is inapplicable to them and their motions to
> dismiss will be granted.

*See also George v. PA DOC*, 2010 WL 936778, *7.

To the extent that Plaintiff is again raising a claim under Title II of the ADA, 42 U.S.C.

§12132, the Court stated in *Wright v. Loftus*, Civil No. 09-1305, M.D. Pa., 11-20-09

Memorandum, p. 8:

> Title II of the ADA prohibits a "public entity" from denying a qualified
> individual with a disability participation in the services, programs, or
> activities of that public entity, or access to public transportation.  42 U.S.C.
>  §§ 12132, 12142, 12162.

As stated, since Defendants are not public entities, the Court has already found that

Title II of the ADA is not applicable to them.  Therefore, as stated, the Court has dismissed with

prejudice Plaintiff's Title II ADA claim against Defendants in their individual capacities.  (Doc. 17).

The Court dismissed without prejudice Plaintiff's original ADA claim for injunctive relief against

Defendants in their official capacities.  (*Id*.).  We now determine if Plaintiff has stated an ADA

claim for injunctive relief against Defendants in their official capacities in his Amended Complaint.

In *O'Donnell v. PA DOC*, 2010 WL 455246, *3 (M.D. Pa. 2-2-10), the Court stated:

> Magistrate Judge Smyser also recommended that this Court dismiss O'Donnell's
> claims under the ADA to the extent that she seeks relief against Beard,
> Moore, Chamberlain, Fultz, Torma, Shepler, Diggan, Bertone, and Nicholas

in their individual capacities. However, pursuant to the dictates of
*Koslow v. Pennsylvania,* 302 F.3d 161, 179 (3d Cir.2002) (concluding that
"federal ADA claims for prospective injunctive relief against state
officials are authorized by the *Ex parte Young* doctrine"), the magistrate
judge recommended that O'Donnell's claims for injunctive relief against the
above officials in their official capacities be allowed to continue. (Rec. Doc.
No. 161 at 14).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The plain language of the ADA evinces an intent by Congress that the statute
only apply to public entities, *see* 42 U.S.C. §12132, and it is clear that the
*Ex parte Young* doctrine allows for ADA claims to proceed against state
officials in their official capacities when such claims are for prospective
injunctive relief, *see Koslow,* 302 F.3d at 179. As such, we agree with the
magistrate judge that O'Donnell's ADA claims against Beard, Moore,
Chamberlain, Fultz, Torma, Shepler, Diggan, Bertone, and Nicholas in their
individual capacities should be dismissed, ... .

The Court has determined that Plaintiff may be able to bring his ADA claim against
Defendants Bledsoe and Norwood in their official capacities for injunctive relief, and it has allowed
him the opportunity to try and amend this claim. With respect to Plaintiff's Amended Complaint,
we find that Plaintiff fails to state a cognizable claim under the ADA based merely on his allegation
that his housing unit in the SMU at USP-Lewisburg was denied an "Emergency Alert, Medical Call
Button," that he was exposed to harsh environmental and ventilation conditions in the SMU, and
that his pain medication dose was lowered. Therefore, we will recommend that Plaintiff's ADA
claim against Defendants Bledsoe and Norwood in their official capacities for injunctive relief be
dismissed with prejudice.

Since Plaintiff has already been afforded one opportunity to amend his ADA claim against
Defendants Bledsoe and Norwood in their official capacities for injunctive relief and he has failed
to do so in a manner required to state a cognizable constitutional claim against them, we find

futility and prejudice to Defendants to allow Plaintiff another opportunity to amend his pleading with respect to his ADA claim.  The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless the Court finds bad faith, undue delay, prejudice, or futility.  *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002);  *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004).

## VI.  Recommendation.

Based on the foregoing, it is respectfully recommended that Plaintiff's Motion for Enforcement of the Court's Doc. 17 Order recommitting this case to the undersigned **(Doc. 20)** be denied as moot.  It is recommended that Defendants USP-Lewisburg Warden Bledsoe, BOP Regional Counsel Sadowski and BOP Northeast Regional Director Norwood be dismissed entirely from this case with prejudice.  It is also recommended that Plaintiff's Eighth Amendment conditions of confinement claim be dismissed with prejudice as against all Defendants.  Further, it is recommended that Defendants Unknown Cert Team Members be dismissed with prejudice. It is recommended that Plaintiff's ADA claim against Defendants Bledsoe and Norwood in their official capacities for injunctive relief be dismissed with prejudice.

Additionally, it is recommended that Plaintiff's Eighth Amendment claim for denial of proper medical care against Defendants PA Potter and Dr. Pigos be allowed to proceed.

Further, it is recommended that the Court deny Plaintiff's **Doc. 21** Motion to Supplement the Record to show he exhausted his tort claim under the FTCA.

Finally, it is recommended that this case be recommitted to the undersigned for further proceedings against Defendants PA Potter and Dr. Pigos, including granting Plaintiff's *in forma pauperis* motion (Doc. 2) and directing service of his Amended Complaint (Doc. 19) on Defendants PA Potter and Dr. Pigos.


s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: February 6 , 2012**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH MURCHISON, | : | CIVIL ACTION NO. **3:CV-11-1944** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| WARDEN, BRIAN BLEDSOE, et al., | : | |
| | : | |
| Defendants | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **February 6 , 2012.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within fourteen (14)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


_____     **s/ Thomas M. Blewitt**
                                                   **THOMAS M. BLEWITT**
                                                   **United States Magistrate Judge**


**Dated: February 6 , 2012**