IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH MURCHISON, | : | CIVIL ACTION NO. **3:CV-11-1944** |
| | : | |
| Plaintiff | : | (Judge Brann) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| WARDEN, BRIAN BLEDSOE, *et al.*, | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

## I.    BACKGROUND.

On October 19, 2011, Plaintiff Kenneth Murchison, an inmate at the United States

Penitentiary Lewisburg, Lewisburg, Pennsylvania ("USP-Lewisburg")[1], filed, *pro se*, a *Bivens* civil

rights action pursuant to 28 U.S.C. § 1331.[2]   (Doc. 1).   Plaintiff attached several exhibits to his

original complaint, mainly copies of his BOP administrative remedy requests and appeals, as well

---

[1]According to the exhibits attached to the original Complaint, Plaintiff is confined in the Special Management Unit ("SMU") at USP-Lewisburg.  We also note that Plaintiff has another case pending with this Court, Civil No. 11-2285, M.D. Pa.  In Plaintiff 's 11-2285 case, Defendants filed a Motion to Dismiss which is pending with the Court.

[2]*See Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971).   Plaintiff's action falls within 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of <u>all</u> civil actions arising under the Constitution, laws or treaties of the United States." (Emphasis added).
As Plaintiff, in part, correctly indicated (Doc. 1, p. 1), this is a *Bivens* action since Plaintiff seeks monetary damages from federal officials for alleged violations of his constitutional rights. *See Oriakhi v. Wood*, 2006 WL 859543, * 1, n. 1 (M.D. Pa.); *Conway v. Lindsay*, 2009 WL 1956282 (M.D. Pa.).  However, Plaintiff incorrectly indicated that his case was also filed under 42 U.S.C. §1983.   Because Plaintiff is not complaining that his constitutional rights were violated by any state actor Defendants, this is not a §1983 civil rights action.  *See Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M.D. Pa. 2005).

as responses thereto. Plaintiff filed a Motion for Leave to Proceed *In Forma Pauperis*. (Doc. 2).

Plaintiff also filed a Motion for Preliminary Injunction. (Doc. 4). Plaintiff's original Complaint was

a short three (3) page form Complaint. (Doc. 1). Plaintiff raised several claims, including an Eighth

Amendment denial of medical care claim, an Eighth Amendment conditions of confinement claim,

a First Amendment denial of access to courts claim, a Fifth Amendment due process claim, as well

as a claim under Section 504 of the Rehabilitation Act, 29 U.S.C. §794, *et seq.*, and a claim under

the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*[3]

On November 9, 2011, Plaintiff filed additional exhibits regarding administrative remedies

he filed with the prison, the responses thereto, and appeals. (Doc. 7).

Plaintiff's Eighth Amendment denial of medical care claim, his claim under Section 504 of

the Rehabilitation Act and his ADA claim all appeared to relate to his allegation that his housing unit

in the SMU was not allowed to possess an "Emergency Alert, Medical Call Button." (*Id.*, p. 2).

Plaintiff's Eighth Amendment conditions of confinement claim related to his allegations that he was

housed in the SMU without proper air conditioning and proper ventilation, and that he was

exposed to "extreme tempertures (sic), namely "heat' in the sometime (sic) [summer], [in] excess,

110 [degrees]." Plaintiff's First Amendment denial of access to courts claim and his Fifth

Amendment due process claim related to his allegations that his grievances regarding his stated

---

[3]Plaintiff incorrectly indicated that his due process claim was under the Fourteenth Amendment in addition to the Fifth Amendment. (Doc. 1, p. 3). Since Plaintiff is a federal inmate complaining of violations of his constitutional rights by federal officials, his due process claim is only under the Fifth Amendment. *See Cadmus v. U.S.*, 2009 WL 1532059, *5 (M.D. Pa. 6-1-09)(Court found that since Plaintiff was suing federal officials in *Bivens* action, Fourteenth Amendment was not applicable to his claims, rather Fifth Amendment applied).

Eighth Amendment claims were not properly processed by the BOP, were denied by "fraudulent measures of new procedures," and were wrongly rejected by the BOP. (*Id*.).

This Court has jurisdiction over Plaintiff's *Bivens* civil rights action pursuant to 28 U.S.C. § 1331. *See Oriakhi v. Wood, supra.; Latansio v. Sabol,* 2010 WL 4340394 (M.D. Pa. 10-26-10).

In his original Complaint, Plaintiff named the following two (2) Defendants: USP-Lewisburg Warden, Brian A. Bledsoe; and BOP Northeast Regional Director, J. L. Norwood. (Doc. 1, pp. 1-2). Plaintiff did not indicate if he was suing the Defendants in their official or personal capacities. As relief, Plaintiff requested injunctive relief as well as monetary damages, both compensatory and punitive damages.[4] (*Id*., p. 3).

On November 21, 2011, we screened Plaintiff's original Complaint as required under the PLRA and recommended that Plaintiff's claim for damages against the Defendants in their official capacities be dismissed with prejudice. We recommended that Plaintiff's claim for injunctive relief in his Complaint for the Court to order the BOP to give him "an immediate transfer" away from USP-Lewisburg be dismissed with prejudice. Additionally, we recommended that Plaintiff's Injunction Motion (Doc. 4) requesting his immediate transfer to USP-Allenwood be denied. We also recommended that Plaintiff's Eighth Amendment conditions of confinement claim and his First Amendment denial of access to courts claim against Defendants Bledsoe and Norwood be dismissed without prejudice. We additionally recommended that Plaintiff's due process claims

---

[4]In a *Bivens* suit, Plaintiff cannot sue the individual federal Defendants for damages in their of official capacities. *See Smith v. U.S.*, 2007 WL 7313360, *6, n. 13 (M.D. Pa.)(citation omitted). Thus, insofar as Plaintiff was seeking damages against the Defendants in their official capacities, the Court dismissed such claims with prejudice. (Doc. 17).

under the Fifth and Fourteenth Amendments, and Plaintiff's Eighth Amendment claim for denial of proper medical care against Defendants Bledsoe and Norwood, be dismissed with prejudice.

Further, we recommended that Plaintiff's ADA claim be dismissed with prejudice as against Defendants Bledsoe and Norwood in their individual capacities, and that Plaintiff's ADA claim against Defendants Bledsoe and Norwood in their official capacities for injunctive relief be dismissed without prejudice. We also recommended that Plaintiff's Rehabilitation Act claim be dismissed with prejudice as against Defendants Bledsoe and Norwood. (Doc. 9).

On November 22, 2011, Plaintiff filed a Motion for Class Action Certification, a Motion for Appointment of Counsel, and a Motion for Leave to file an Amended Complaint along with a proposed Amended Complaint. (Docs. 10, 11 and 12, and 13).

On January 17, 2012, the Court adopted our Doc. 9 R&R and recommitted this case to the undersigned. (Doc. 17).

On January 17, 2012, we issued a Memorandum and Order with respect to Plaintiff's pending Motions, namely, his Motion for Class Action, his Motion for Appointment of Counsel, and his Motion for Leave to file an Amended Complaint (Docs. 10, 11 and 12). (Doc. 17). In our Order, we directed as followed**:**

**1)** Plaintiff's Motion for Class Certification under Rule 23 **(Doc. 10) is DENIED**.

**2)** Plaintiff 's Motion for Appointment of Counsel **(Doc. 11) is DENIED.**

**3)** Plaintiff 's Motion for Leave to Amend his Complaint **(Doc. 12) is GRANTED**.

**4)** The Clerk of Court is directed to file and docket Plaintiff's Amended Complaint **(Doc. 13).** (*Id*.).

4

Subsequently, on January 24, 2012, the Clerk of Court docketed Plaintiff 's proposed Amended Complaint. (Doc. 19). Also, on January 24, 2012, Plaintiff filed a Motion for Enforcement of the Court's Doc. 17 Order recommitting this case to the undersigned. (Doc. 20). Plaintiff simply requested that the undersigned review his Amended Complaint, to "issue a Report and Recommendation favorly (sic) upon it" and to allow his case to proceed. Plaintiff attached two exhibits to his Doc. 20, namely copies of his June 2011 administrative remedy appeal regarding his grievance that upon his May 2011 arrival at USP-Lewisburg he should not have been ordered to serve an additional 24 months in the SMU program and a copy of the BOP's final response and denial of his appeal dated January 10, 2012.

Plaintiff indicated in his Amended Complaint that he exhausted his BOP administrative remedies regarding some of his present claims, but it appears not all of them. (Doc. 19, p. 1). As mentioned, Plaintiff attached to his original Complaint exhibits regarding his attempts to exhaust his claims.[5] (Doc. 1). Plaintiff also again stated in his Amended Complaint that the BOP administrative remedy process at USP-Lewisburg "is being severely violated" and that grievances are being "fraudulently handled" on all levels of the BOP. (Doc. 19, p. 1).

---

[5]It is well-settled that the Plaintiff must exhaust all of his available administrative remedies with respect to each and every one of claims prior to filing a civil rights suit. In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*

On January 27, 2012, Plaintiff filed a Motion to Supplement the Record with an attached exhibit. (Doc. 21). Plaintiff stated that on January 13, 2012, the BOP Regional Counsel finally denied his July 14, 2011 administrative tort claim he filed under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2672. Plaintiff's Exhibit A attached to his Doc. 21 Motion was a copy of the letter from the BOP Regional Counsel denying his tort claim. Plaintiff stated that he wanted to supplement the record in his present *Bivens* civil rights action to show that his tort claim "has now been unsuccessfully exausted (sic) and that lawful remedy, on the administrative level, has been denied." Plaintiff also stated that this letter from the BOP showed that it delayed deciding his tort claim for six months while his health deteriorated and that this denied him access to the court to redress his claim.

On February 6, 2012, we screened Plaintiff 's Amended Complaint and issued a Report and Recommendation ("R&R"). (Doc. 22). In our R & R, we recommended that Plaintiff's Motion for Enforcement of the Court's Doc. 17 Order recommitting this case to the undersigned (Doc. 20) be denied as moot. Additionally, we recommended that Defendants USP-Lewisburg Warden Bledsoe, BOP Regional Counsel Sadowski and BOP Northeast Regional Director Norwood be dismissed entirely from this case with prejudice. Furthermore, we recommended that Plaintiff's Eighth Amendment conditions of confinement claim be dismissed with prejudice as against all Defendants. Further, we recommended that Defendants Unknown Cert Team Members be dismissed with prejudice. We recommended that Plaintiff's ADA claim against Defendants Bledsoe and Norwood in their official capacities for injunctive relief be dismissed with prejudice.

Additionally, we recommended that Plaintiff's Eighth Amendment claim for denial of proper medical care against Defendants PA Potter and Dr. Pigos be allowed to proceed.

Furthermore, we recommended that the Court deny Plaintiff's Doc. 21 Motion to Supplement the Record to show he exhausted his tort claim under the FTCA.

Finally, we recommended that this case be recommitted to the undersigned for further proceedings against Defendants PA Potter and Dr. Pigos, including granting Plaintiff's *in forma pauperis* motion (Doc. 2) and directing service of his Amended Complaint (Doc. 19) on Defendants PA Potter and Dr. Pigos.

Plaintiff filed an Objection (Doc. 23) to our February 6, 2012 R & R. (Doc. 23). Subsequently, Plaintiff filed a Motion for Discovery on May 7, 2012. (Doc. 28).

The District Court's Order of July 11, 2012 (Doc. 31) adopted the our Doc. 22 R & R in part and rejected it in part. All of Plaintiff's claims were dismissed except for his Eighth Amendment claim for denial of proper medical care against Defendants PA Potter and Dr. Pigos. The District Court stated that the Plaintiff could file a second amended complaint within forty-five days from July 11, 2012. However, the Court directed that Plaintiff's second amended complaint was only allowed to contain: (1) an Eighth Amendment claim for denial of proper medical care against Defendants PA Potter and Dr. Pigos; (2) An Eighth Amendment conditions of confinement claim; (3) a claim against Defendant Warren Bledsoe and Unnamed Administrative Remedy Coordinators for "forced cell mating;"(4) a First Amendment denial of access to courts claim; and (5) a claim under the FTCA.

Furthermore, the District Court deemed moot Plaintiff's Motion for Recommitment Order (Doc. 20). Additionally, Plaintiff's Motion to Supplement (Doc. 21) was denied.

Plaintiff filed a Brief in Support of his Objection (Doc. 34) to this Court's Report and Recommendation. (Doc. 22). Furthermore, Plaintiff filed an additional Objection (Doc. 35) to this Court's R & R of February 6, 2012. (Doc. 35).

Plaintiff did not timely filed a second amended Complaint as directed by the Court in its Doc. 31 Order. Thus, Plaintiff was deemed as proceeding on his Amended Complaint with respect to only his Eighth Amendment claim for denial of proper medical care against Defendants PA Potter and Dr. Pigos.

On August 14, 2012, we issued an Order withdrawing Plaintiff's Motion for Discovery (Doc. 36) for Plaintiff's failure to file a supporting brief. Additionally, on the same date, we filed an Order (Doc. 37) that stated the following: 1) Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 2) was construed as a motion to proceed without full prepayment of fees and costs and the motion was granted; 2) We directed the Clerk of Court to issue process to the United States Marshal to serve Plaintiff's Amended Complaint (Doc. 19) on Defendants Pigos and Potter; 3) We further directed the Clerk of Court to provide a form of Notice and Consent to the Jurisdiction of a Magistrate Judge. (Doc. 37).

On September 4, 2012, Defendants Pigos and Potter filed a Waiver of Service (Doc. 39) of Plaintiff's Amended Complaint. (Doc. 19). Subsequently, Plaintiff filed a letter requesting the status of the case and an updated copy of the docket sheet. (Doc. 41).

On October 15, 2012, Defendants Pigos and Potter jointly filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment **(Doc. 43)** with an attached Proposed Order. (Doc 43-1). Subsequently, on October 24, 2012, Plaintiff filed a document entitled "Motion in Rebuttal to Defendants motion to dismiss." (Doc. 45). Additionally, Plaintiff filed a Brief in Support of said Motion. (Doc. 46). Plaintiff subsequently included an addendum to (Doc. 46) titled "Addendum to Brief and Memorandum, in Support of Motion in Rebuttal."(Doc. 49).

Finally, on October 31, 2012, Defendants filed their Brief in Support (Doc. 47) of their Doc. 43 dispositive Motion, and their Statement of Facts (Doc. 48).[6] Additionally, Defendants' Brief in Support of their Motion (Doc. 47) has Exhibits attached, Exs. 1 & 2, with Attachments. (Doc. 47-1).

Defendants Motion to Dismiss or in the alternative, Motion for Summary Judgment **(Doc. 43)** is ripe for disposition.

## II.    STANDARDS OF REVIEW.

### A.    *MOTION TO DISMISS*

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and

---

[6]Defendants note in their brief that it was filed late, along with their SMF, by two days due to the closure of the office of their counsel due to bad weather on October 29 and 30, 2012, *i.e.,* Hurricane Sandy. (Doc. 47, p. 1, n. 1). We will accept Defendants' stated filings as timely, *nunc pro tunc.* As such, Plaintiff's request that we strike Defendants' stated filings as untimely is denied. (Doc. 49, pp. 1-2).

*Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-

pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

### B.    MOTION FOR SUMMARY JUDGMENT STANDARD

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law.   Fed.R.Civ.P. 56.   The court may grant a motion  for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party."  *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A fact is "material" if proof of its existence or non-existence could affect the outcome of the action pursuant to the governing law.  *Anderson*,   477 U.S. at 248.  "Facts that could alter the outcome are material facts."   *Charlton v. Aramus Bd. of Educ.*, 25 F. 3d 194, 197 (3d Cir.), *cert. denied*, 513 U.S. 1022 (1994).

The burden of proving that there is no genuine issue of material fact is initially upon the movant.  *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving party.  *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence

in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.*, quoting *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

Under Rule 56 summary judgment must be entered where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Moreover, the Third Circuit has indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007)(Non-Precedential)(citation omitted).

Thus, "summary judgment is proper, when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. General Motors*, 2009 WL 237247, *2 (3d Cir.)(citation omitted); *Page v. Trustees of Univ. of Pennsylvania*, 222 Fed. Appx. 144 at 145 (3d Cir. 2007) (the court must "view the facts in the light most favorable to the party opposing the [summary judgment] motion when making [its] determination."); *Burlington v. News Corp.*, 759 F.Supp. 2d at 589-90. "Material facts" are those which might affect the outcome of the suit. *Justofin v. Metropolitan Life*

*Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004).

### C. BIVENS STANDARD

A *Bivens* civil rights action under § 1331 has the same standards as does a § 1983 civil rights

action. In *Naranjo v. Martinez*, 2009 WL 4268598, *6 (M.D. Pa.), the Court stated:

> *Bivens* creates no substantive rights, but rather allows "a citizen
> suffering a compensable injury to a constitutionally protected interest [to]
> invoke the general federal-question jurisdiction of the district court to obtain
> an award of monetary damages against the responsible federal official." *Butz
> v. Economou*, 438 U.S. 478, 504, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). A
> civil rights claim brought under Bivens is the federal counterpart to an action
> brought under 42 U.S.C. § 1983, and the same legal principles
> governing a § 1983 claim apply to a *Bivens* claim. *Brown v. Philip Morris Inc.*,
> 250 F.3d 789, 800 (3d Cir.2001); *Paton v. LaPrade*, 524 F.2d 862, 871 (3d
> Cir.1975); *Cyrus v. Hogsten*, No. 06-2265, 2007 WL 88745, at *3 (M.D.Pa.
> Jan.9, 2007). To state a claim under *Bivens,* the plaintiff must show that the
> defendant, acting under color of Federal law, deprived him of a right secured
> by the Constitution or laws of the United States. *Brown*, 250 F.3d at 800;
> *Cyrus*, 2007 WL 88745, at *3 Civil rights claims may only be brought against
> "persons." 42 U.S.C. § 1983. Individual liability in a civil rights action is
> personal in nature, and a defendant is liable only if he was personally,
> affirmatively involved in the alleged malfeasance. *C.N. v. Ridgewood Bd. of
> Educ.*, 430 F.3d 159, 173 (3d Cir.2005); *Robinson v. City of Pittsburgh*, 120
> F.3d 1286, 1294
> (3d Cir.1997), abrogated in part on other grounds by *Burlington N. & Santa
> Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)
> (citing *Rhode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988). Further,
> "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a
> plaintiff must plead that each Government-official defendant, through the
> official's own individual actions, has violated the constitution." *Ashcroft v.
> Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1948, 173 L.Ed.2d
> 868 (2009) (collecting cases).

*See also Latansio v. Sabol,* 2010 WL 4340394, *2-*3.

## III.    ALLEGATIONS OF AMENDED COMPLAINT (DOC. 19).

In his Amended Complaint, Plaintiff named the following seven (7) Defendants: USP-Lewisburg Warden, Brian A. Bledsoe; BOP Northeast Regional Director, J. L. Norwood; Unknown BOP Administrative Remedy Coordinators; Henry J. Sadowski, BOP Tort Claim Coordinator; Physician Assistant ("PA") Potter; Dr. Pigos, MD; and unnamed USP-Lewisburg "Sort" [CERT] Team Members. (Doc. 19, p. 1). In his Amended Complaint, Plaintiff indicated that he sued Defendants in both their personal capacities and their official capacities.[7]   As stated, the Court has allowed Plaintiff to proceed on his Amended Complaint only with respect to his Eighth Amendment claim for denial of proper medical care against Defendants PA Potter and Dr. Pigos.

With respect to the two remaining USP-Lewisburg medical Defendants, Dr. Pigos and PA Potter, Plaintiff alleges that they intentionally and maliciously, and without any examination, drastically lowered his dosage of Gabapentin pain medication he required for his nerve disease and pain caused by his Type I diabetes by 300 mgs. per dose, *i.e.*, from 1200 mgs. to 900 mgs., twice per day in retaliation for a prior adverse incident he had with Defendant PA Potter, a medical staff member at the prison. Plaintiff avers that the dosage was deliberately lowered by the medical Defendants as punishment for the prior conflict and to cause him excruciating pain for seven (7) days. Plaintiff states that it also caused him irreparable damage to his body, including permanent debilitating injuries to his nerve endings. Plaintiff states that the alleged conduct of Defendants Pigos and Potter violated his Eighth Amendment rights.

---

[7]As noted, insofar as Plaintiff is seeking damages against the Defendants in their official capacities, the Court dismissed such claims with prejudice. (Doc. 17).

As relief, Plaintiff requests compensatory and punitive damages. Plaintiff also requests injunctive relief.[8]

As discussed, the Court has found that Plaintiff stated an Eighth Amendment denial of proper medical care claim against Defendants Dr. Pigos and PA Potter in his Amended Complaint.

## IV. STATEMENT OF MATERIAL FACTS.

As mentioned, Defendants Dr. Pigos and PA Potter properly submitted their SMF (Doc. 48) with respect their alternate Summary Judgment Motion in which they contend that the undisputed evidence shows that they were not deliberately indifferent to Plaintiff's serious medical needs, and Plaintiff has failed to respond to it. Defendants cited to evidence in the record to support each one of their SMF, ¶'s 1-49. (*See* Doc. 47-1). We find that paragraphs 1-49 of Defendants' SMF are proper material facts and are relevant to this case.[9] As stated, Plaintiff did not respond to ¶'s 1-49 of Defendants' SMF. Therefore, we find that paragraphs 1-49 of Defendants' SMF and the material facts stated therein are undisputed since they are supported by citation to the record and, since Plaintiff has not opposed any of them and cited to any evidence to controvert them.

Thus, Plaintiff failed to file his paragraph-by-paragraph responses to ¶'s 1-49 of Defendants' SMF as he was required to do under Local Rule 56.1. Plaintiff also failed to submit any evidence to dispute any of Defendants' SMF. Regardless, paragraphs 1-49 of Defendants' SMF (Doc. 48) are

---

[8]To the extent Plaintiff again sought injunctive relief in the form of an Order from this Court to immediately transfer him from USP-Lewisburg (Doc. 19, p. 5, ¶ 3), the Court has already denied this request. (Doc. 17).

[9]"Material facts" are those which might affect the outcome of the suit. *Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004).

supported by the record submitted by Defendants (Doc. 47-1). Thus, we find that paragraphs 1-49 of Defendant's SMF are undisputed.[10] *See Cyrus v. Laino*, Civil No. 08-1085, M.D. Pa.; *Cyrus v. Freynik*, Civil No. 08-2278, M.D. Pa.; *Michtavi v. Martinez*, 2009 WL 5172962 (M.D. Pa.); *Hemingway v. Ellers, 2008 WL 3540526 (M.D. Pa.); Accolla v. U.S.*, 2009 WL 3625383 (M.D. Pa.), affirmed 2010 WL 763550 (3d Cir.)(court found that since Plaintiff inmate in civil rights action did not properly respond to prison staff Defendants' statement of facts as required by L.R. 56.1, M.D. Pa., Defendants' statement of facts were undisputed). Despite Plaintiff's failure to properly respond to Defendants' statement of facts, we accept Defendants' statement of facts since they are all supported by their undisputed evidence.[11]

---

[10]Also, Defendants' paragraphs 1-49 are all supported by their evidence and accepted as undisputed.

In the case of *Barthalow v. David H. Martin Excavating, Inc.*, 2007 WL 2207897, * 1, n. 5, (M.D. Pa. 2007), this Court noted:

> The Middle District of Pennsylvania's Local Rule of Court 56.1 provides that a summary judgment motion must include a separate concise statement of material facts. M.D. Pa. Local R. 56.1. The rule also requires that an opposition to a summary judgment motion must similarly include a statement that "responds to the numbered paragraphs set forth in [the moving party's concise statement of material facts], as to which it is contended that there exists a genuine issue to be tried." *Id.* Moreover, "[a]ll material facts set forth in [the moving party's statement] will be deemed to be admitted unless controverted by the [opposing party's statement]. " *Id.*

*See also Dusenbery v. U.S.*, 2006 WL 218220, * 1 (M.D.Pa. 2006) ("it appearing that defendants' statement of material facts was properly deemed admitted by plaintiff *see* L.R. 56.1 providing that the moving party's statement of material facts will be deemed admitted unless the non-moving party specifically contradicts the statement").

[11]Plaintiff was provided with a copy of the pertinent Local Rules of this Court. (Doc. 5).

## V.    DISCUSSION.

Regarding their initial Motion to Dismiss, Defendants argue that Plaintiff failed to exhaust his available BOP administrative remedies with respect to his remaining Eighth Amendment claim against Defendants Dr. Pigos and PA Potter.   Defendants state that Plaintiff filed 47 administrative remedies with the BOP Central Office, and that none of these administrative remedies pertain to the constitutional claim Plaintiff 's raised in his Amended Complaint.   Defendants cite to their undisputed evidence to support their contention, namely, the Declaration of Michael Romano and Attachment B to it.  (Doc. 47, p. 6; Doc. 47-1, pp. 3-5, Ex. 1 & Att. C, pp. 16-39).   Specifically, Romano avers that a review of the SENTRY computer generated BOP Administrative Remedy Generalized Retrieval was performed regrading Plaintiff 's administrative remedies, and that the results showed "[Plaintiff] has filed 47 remedies at the national level."   Romano also avers that "[n]one of the remedies [Plaintiff filed] pertained to the issue raised in the instant [Amended] Complaint."  (Doc. 47-1, p. 5).   In their brief, Defendants conclude that since Plaintiff failed to exhaust his BOP administrative remedies with respect to his remaining Eighth Amendment claim against them, the Court should enter summary judgment in their favor.

A prisoner is barred from bringing a civil rights action in federal court "until such administrative remedies as are available have been exhausted."  42 U.S.C. §1997e(a).

As the Courts have repeatedly held, it is well-settled that the Plaintiff inmate must exhaust his  administrative remedies prior to filing a civil rights suit.  *See Mitchell v. Dodrill*, 696 F.Supp.2d 454 (M.D.Pa. 2010); *Ahmed v. Dragovich*, 297 F.3d 201, 209 & n. 9 (3d Cir. 2002). In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement

under § 1997e(a) applies to all actions regarding prison conditions, including § 1983 actions or actions brought pursuant to any other federal law, including this *Bivens* action. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.; Woodford v. Ngo,* 126 S Ct. 2378 (2006); *Fortune v. Bitner*, 2006 WL 2769158, *7 (M.D.Pa.)("The PLRA mandates that inmates 'properly' exhaust administrative remedies before filing suit in federal court.")(citation omitted). Further, the Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *Fortune v. Bitner*, 2006 WL 2769158, *7.

"A prisoner must exhaust all available administrative remedies before initiating a federal lawsuit." *Lombardi v. Pugh*, 2009 WL 1649908, *3(M.D. Pa. 6-9-09)(citation omitted). Further, "the exhaustion requirement is not satisfied if the inmate files an action in the district court prior to completing the administrative remedy process." *Id.*(citation omitted); *See also Mitchell v. Dodrill*, 696 F.Supp.2d at 463-64(Court stated that "most circuit courts are in agreement that a prisoner may not satisfy the PLRA's exhaustion requirement by exhausting administrative remedies *after* initiating suit in federal court.")(emphasis original)(citations omitted).

The Third Circuit has repeatedly stated that the PLRA "requires that inmate-Plaintiffs exhaust all administrative remedies prior to filing suit in federal court." *Banks v. Roberts*, 2007 WL 3096585, * 1 (3d Cir. 10-19-07)(Non-Precedential) (citation omitted). The *Banks* Court also noted that a futility exception to the PLRA's mandatory exhaustion requirement is completely precluded. *Id.; Spruill v. Gillis,* 372 F. 3d 218, 228-230 (3d Cir. 2004); *see also Nyuis v. Reno*, 204 F.3d 65, 71 (3d

Cir. 2000).

We take judicial notice that the BOP had an administrative remedy policy at USP-Lewisburg during the relevant times of this case. *See Cooper v. Sniezek*, 2010 WL 3528848, *7-*8 (M.D. Pa. 9-7-10); *Mitchell v. Dodrill*, 696 F.Supp.2d at 463-64.

The *Cooper* Court stated as follows:

> An inmate may challenge any aspect of his or her confinement using the BOP's administrative remedy procedure, which is set forth at 28 C.F.R. §§ 542 *et seq.* An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. *Id.* at § 542.14(a). The inmate has twenty (20) days following the date on which the basis for the complaint occurred in which to complete informal resolution and submit a formal written administrative remedy request. *Id.* The procedure further provides that an extension may be allowed where an inmate demonstrates a valid reasons for delay. *Id.* at § 542.14(b). The regulation states, in part:

> Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request of Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request of Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed.

> *Id.* If dissatisfied with the response to the formal written request, the inmate may then appeal an adverse decision to the Regional Office and the Central Office of BOP's General Counsel. *Id.* at §§ 542.15(a) and 542.18. No administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office. *Id.* at § 542.15(a).

> 2010 WL 3528848, *7-*8.

The *Cooper* Court also stated:

> A prisoner must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process. *See Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner,* 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). "[I]t is beyond the power ... of any ... [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno,* 204 F.3d 65, 73 (3d Cir.2000) (quoting *Beeson v. Fishkill Corr. Facility,* 28 F.Supp.2d 884, 894-95 (S.D.N.Y.1998) (citing *Weinberger v. Salfi,* 422 U.S. 749, 766, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis,* 204 F.3d at 71. The PLRA also mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo,* 548 U.S. 81, 92, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."*Id.* at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 93 (quoting *Nussle,* 534 U.S. at 525). Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis,* 372 F.3d 218, 227-32 (3d Cir.2004). 2010 WL 3528848, *7.

Thus, we first address the threshold question of whether Plaintiff has exhausted all available remedies regarding his Eighth Amendment claim against Defendants. We conclude that Plaintiff has not exhausted his BOP administrative remedies before filing his action with this Court. Michael Romano is the Attorney Advisor for USP-Lewisburg and has held that position since May of 2006. As stated, according to his Declaration executed on September 27, 2012 (Doc. 47-1), "[a]

review of SENTRY computer generated Administrative Remedy Generalized Retrieval was performed. The field was narrowed to remedies filed at the national level (Reflected on the SENTRY printout as "Remedy Level: "A".) The results revealed Petitioner [Plaintiff] has filed 47 remedies at the national level. None of the remedies pertained to the issue raised in the instant Complaint." (Doc. 47-1, p. 5).

In his Docs. 45 & 46 filings in opposition to Defendants' dispositive motion, Plaintiff does not contest the fact that he failed to exhaust his BOP administrative remedies regarding his Eighth Amendment claim against Defendants. However, as mentioned above, Plaintiff filed a document titled an "addendum to Brief in Support of his Motion in Rebuttal." (Doc. 49). In this document, Plaintiff states that "there is evidence shown by my exhibits, filed by the Plaintiff, in the Court, that will satisfy the claim and the PLRA, that the Administrative Remedy has been exhausted." (Doc. 49, p. 3). Plaintiff further states that proof that he has exhausted his administrative remedies is already with the Court in the form of his Exhibits that were filed with his Original Complaint. (Doc. 1). Plaintiff states that Defendants' contention that he failed to exhaust his administrative remedies is "untrue and misleading."

Plaintiff's Exhibits A, E, and F did not pertain to any remaining issues in this case thus they will not be discussed. (Docs. 1-1; 1-4; 1-5). Plaintiff's Exhibit B (Doc. 1-2, p. 1) is the October 4, 2011 response from the BOP Northeast Regional Office to Plaintiff's administrative remedy, no. 657614-R1, filed on September 19, 2011, complaining about his medical care and staff misconduct. This administrative remedy was rejected because it did not raise a sensitive issue and it was filed at the wrong level. According to the response, the BOP rejected the administrative

remedy and advised Plaintiff that "you must first file a BP-9 request through the institution [USP-Lewisburg] for the warden's review and response before filing an appeal at this level." (Doc. 1-2, p. 1).

Additionally, Plaintiff submitted an administrative remedy no. 647642-A1 dated July 29, 2011, in which Plaintiff complained of delay/lack of access to medical care as well as misconduct by staff. Plaintiff's administrative remedy was rejected by the BOP Central Office on August 8, 2011, because Plaintiff filed it at the wrong level. Again, Plaintiff was advised that he must first file a BP-9 request through the institution for the warden's review and obtain a response before filing an appeal at this level. (Doc. 1-2, p. 3).

Furthermore, on July 14, 2011 Plaintiff filed an administrative remedy no. 647537-F1 complaining about his prescriptions and medication stating that Defendant Dr. Pigos "wrongly lowered" the dosage of his pain medication, "Gabapentin," and he alleged "Malpractice." Plaintiff's administrative remedy was rejected by the Administrative Remedy Coordinator at USP-Lewisburg because he did not attempt informal resolution prior to submission of his administrative remedy, or he did not provide enough evidence of his attempt at an informal resolution. (Doc. 1-3, pp. 2-3).

Additionally, Plaintiff filed an administrative remedy no. 647537-R1 based on complaints about his prescriptions and medication on July 27, 2011. Plaintiff's an administrative remedy was rejected on July 28, 2011, by the BOP Administrative Remedy Coordinator because Plaintiff did not attempt informal resolution prior to submission of his administrative remedy, and he was required to first file a BP-9 request through the institution for the warden's review and obtain a

response before filing an appeal at this level. (Doc. 1-3, pp. 4-5).

Furthermore, Plaintiff filed an administrative remedy no. 647537-R2 on August 10, 2011 again stating that his prescription was "wrongly lowered." The an administrative remedy no. 647537-R2 was rejected on August 23, 2011, by BOP Administrative Remedy Coordinator because Plaintiff did not attempt informal resolution prior to submission of the administrative remedy. Additionally, Plaintiff's an administrative remedy was rejected because he did not file a BP-9 request through the institution for the warden's review prior to filing an appeal. (Doc. 1-3, pp. 7-8).

Finally, Plaintiff filed an administrative remedy on June 21, 2011 and August 2, 2011 citing delay and/or access to medical care as his reason for filing both. Both of Plaintiff's administrative remedies were rejected for the following reasons: 1) Plaintiff was first required to file a BP-9 request through the institution for the warden's review and response before filing an appeal at this level; 2) The request or appeal was submitted to the wrong level. Plaintiff should have filed at the institution, regional office, or central office level; 3) Plaintiff did not provide a copy of his institutional administrative remedy request (BP-9) form or a copy of the (BP-9) response from the warden; and 4) Plaintiff did not provide a copy of his regional office administrative remedy appeal (BP-10) form or a copy of the (BP-10) response from the regional director. (Doc. 1-3, pp. 11-13).

Based on the above, Plaintiff's own evidence shows that he did not properly exhaust his BOP administrative remedies raising his instant denial of proper medical care claim against the two remaining Defendants. Thus, we find that Plaintiff did not properly exhaust his BOP administrative remedies with respect to his remaining claim against Defendants. Additionally, upon review of

Defendants' Exhibit 1 and Attachment C (Doc. 47-1, pp. 3-5 & pp. 16-39) we find that Michael Romano provides sufficient evidence to show that none of the administrative remedies filed by the Plaintiff which were fully exhausted at the BOP national level pertained to the remaining issue raised in his Amended Complaint. Because the exhaustion issue is a threshold issue and we find Plaintiff failed to fully exhaust his BOP administrative remedies with respect to his remaining claim, we will recommend that Defendants' Motion to Dismiss **(Doc. 43)** be granted. *See Lasko v. Hendershot*, 2006 WL 2828787 (M.D. Pa. 9-29-06); *Hookey v. Lomas*, 2010 WL 936230, *6 (M.D. Pa. 3-15-10).

Moreover, as stated, Plaintiff did not respond to ¶'s 1-49 of Defendants' SMF, Doc. 48, which detail the relevant medical treatment Plaintiff received. Therefore, as mentioned, we find that paragraphs 1-49 of Defendants' SMF and the material facts stated therein are undisputed since they are supported by Defendants' citation to the record and, since Plaintiff has not opposed any of them and cited to any evidence to controvert them.

It is clear that the undisputed evidence shows that Defendants Dr. Pigos and PA Potter did not violate Plaintiff's Eighth Amendment right to proper medical care. Defendants' SMF and their evidence demonstrates that their treatment of Plaintiff did not amount to a constitutional violation. We agree entirely with Defendants who state:

> Plaintiff has been treated for his diabetes and seen by medical staff on a regular basis. (SMF ¶¶ 1-49). These medical visits concerning his diabetes included testing, treatment, counseling and changes to his medication. (Id.). The undisputed evidence shows that ne was never denied treatment, and/or medication to control his pain. Rather, different dosages of the pain medication were trialed to determine what worked best for him. (SMF ¶¶ 8,9, 17, [18], 20, 22, 25, 27, 34, 38, 42-47).

(Doc. 47, p. 7).

The Third Circuit stated in *DeFranco v. Wolfe*, 387 F. App'x 147, 158 (3d Cir. 2010):

To demonstrate an Eighth Amendment violation, [the inmate] must show:

> "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). We have interpreted this to mean that there are two prongs to the inquiry: (1) deliberate indifference on the part of prison officials; and (2) the prisoner's medical needs are serious. *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir.1987); *accord Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir.1999).

> Deliberate indifference is more than an "inadvertent failure to provide adequate medical care." *Estelle,* 429 U.S. at 105, 97 S.Ct. 285. It is more than mere negligence or medical malpractice without some more culpable state of mind. *Id.* at 106, 97 S.Ct. 285; *Rouse,* 182 F.3d at 197; *Lanzaro,* 834 F.2d at 346. For example, disagreement of professional opinion among doctors does not equal deliberate indifference. *Rouse,* 182 F.3d at 197; *Lanzaro,* 834 F.2d at 346. Instead, it requires "obduracy and wantonness ... [,] which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse,* 182 F.3d at 197 (citations omitted).

The Third Circuit further defined deliberate indifference in *Natale v. Camden City Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003). The Court held:

> A prison official acts with deliberate indifference to an inmate's serious medical needs when "he knows of an disregards an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment... ." *Estelle*, 429 U.S. 97. Accordingly, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most

> it is medical malpractice." *Id* at 107. "[A]s long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a civil rights cause of action, and an inmate's disagreement with medical treatment is insufficient to establish a "deliberate indifference." *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

*See also George v. PA DOC*, 2010 WL 936778, *5.

We find that has Plaintiff failed to prove the elements of an Eighth Amendment claim in relation to Defendants because Defendants' undisputed evidence shows that they did not act with deliberate indifference to Plaintiff's serious medical needs. As stated, Plaintiff has not submitted any evidence to dispute Defendants' evidence which shows that Plaintiff was denied treatment for his diabetes condition and he was not denied pain medication. The evidence shows that the adjustments in the dosage of Gabapentin prescribed to Plaintiff by Defendants was not done in deliberate indifference to Plaintiff's pain, and that it was done to properly treat Plaintiff for his diabetes and neuropathy.

Therefore, we find that the undisputed evidence shows that Defendants did not violate Plaintiff's Eighth Amendment right to medical care as Plaintiff claims in his Amended Complaint.

Moreover, mere negligence is not sufficient to state a constitutional claim. In *Whitely v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078 (1986), the Supreme Court stated that "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize[s] that conduct prohibited by the Cruel and Unusual Punishment clause, ... ." We find that Plaintiff's allegations

only claim that Defendants may have made an error in judgment in prescribing the pain medication for Plaintiff's diabetes condition.

Furthermore, in *Caldwell v Beard*, 324 Fed.Appx. 186, 188 (3d Cir. April 27, 2009), the Third Circuit Court of Appeals stated, "[c]laims of negligence, without a more culpable state of mind, do not constitute 'deliberate indifference.' *See Singletary v. Pa. Dept. Of Corr.*, 266 F.3d 186, 193 n. 2 (3d Cir.2001)." Thus, since we find that Plaintiff's claim alleging Defendants prescribed pain medication in dosages which he did not agree with amounts only to negligence, his claim is not actionable under § 1983.

Thus, in the alternative, we will recommend that the Motion for Summary Judgment of Defendants Dr. Pigos and PA Potter be granted, and that judgment be entered in their favor with respect to Plaintiff's Eighth Amendment denial of medical care claim against them.

## VI.    RECOMMENDATION.

Based on the foregoing, it is respectfully recommended that Defendants' Motion to Dismiss (**Doc. 43**) be granted since Plaintiff failed to properly exhaust his BOP administrative remedies with respect to his constitutional claim against Defendants Dr. Pigos and PA Potter.

In the alternative, it is recommended that the Motion for Summary Judgment of Defendants Dr. Pigos and PA Potter (**Doc. 43**) be granted, and that Judgment be entered in their favor and against Plaintiff with respect to Plaintiff's Eighth Amendment denial of medical care claim against them.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: May 23, 2013**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH MURCHISON, | : | CIVIL ACTION NO. **3:CV-11-1944** |
| | : | |
| Plaintiff | : | (Judge Brann) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| WARDEN, BRIAN BLEDSOE, *et al.*, | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **May 23, 2013.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

s/ Thomas M. Blewitt
THOMAS M. BLEWITT
United States Magistrate Judge

**Dated: May 23, 2013**

29